NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT RUDOLPH, | **Hon. Dennis M. Cavanaugh** |
| Plaintiff, | **OPINION** |
| v. | Civil Action No. 06-cv-1511 (DMC) |
| YARI FILM GROUP RELEASING, *et al*., | |
| Defendants. | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion by Defendants MHF Zweite Academy Film, Bob Yari Productions, Stratus Film Company, Wolfgang Schamburg, Dr. Ernst-August Schneider, Oliver Hengst and Bob Yari (collectively the "Foreign Defendants) to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). Oral argument was heard on this matter on March 20, 2007. After carefully considering the submissions of the parties and based upon the following, it is the finding of this Court that the Foreign Defendants' motion to dismiss is **denied**.

**I.   BACKGROUND**

    **A.   Factual Background**

Plaintiff Robert Rudolph ("Rudolph") was, until recently, a long-time staff writer for The Star Ledger of Newark. Compl. ¶4. Between November 1986 and August 1988, Rudolph covered a twenty-one month criminal trial before the United States District Court for the District of New Jersey, sitting in Newark, in which the federal government indicted more than twenty alleged

members of the Lucchese crime family (the "Trial"). Id. ¶¶ 38, 43, 47. In 1992, Rudolph published a book about the Trial titled The Boys from New Jersey: How the Mob Beat the Feds, reflecting Plaintiff's research of the Trial. Id. ¶ 38.

In or around 2005, Defendants began producing a film entitled FIND ME GUILTY (the "Film"), which allegedly portrays the same events addressed in Plaintiff's Book. Id. ¶ 61-64. FIND ME GUILTY was filmed in significant part in the State of New Jersey. Id. ¶6.

Plaintiff brought suit against 45 defendants, known and unknown, including individuals, corporations, producers, directors and actors, alleging claims for copyright infringement, misappropriation and unjust enrichment. Included among the defendants are the Foreign Defendants. The Foreign Defendants have filed this motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), arguing that the Court lacks personal jurisdiction over them.

**B.     "Foreign Defendants"**

1.    MHF Zweite Academy Film

MHF Zweite Academy ("MHF Zweite") is a privately-held German limited liability partnership that invested in the movie, thereby obtaining intellectual property rights in it and receiving credit as one of the movie's producers. Declaration of Wolfgang Schamburg ("Schamburg Decl.") ¶¶ 6, 8. All agreements, negotiations and communications regarding MHF Zweite's role as an investor-producer took place in either Germany or California. Id. ¶ 9. According to the Schamburg Declaration, MHF Zweite played no role in the creation, promotion or distribution of the movie that may have taken place in New Jersey. Id. ¶ 8.

MHF Zweite's only office is in Grunwald, Germany. Id. ¶ 7. MHF Zweite does not own real estate in New Jersey nor does it hold bank accounts, own personal property or rent property situated

in New Jersey. Id. Additionally, MHF Zweite is not registered to do business in New Jersey, does not pay taxes in New Jersey and does not have a mailing address or phone listing in New Jersey. Id. Finally, MHF Zweite has no employees or agents in New Jersey. Id.

### 2. Bob Yari Productions and Stratus Film Company

Bob Yari Productions ("BYP") and Stratus Film Company ("Stratus") are separately incorporated under California law with their principal places of business in Los Angeles. Declaration of Bob Yari ("Yari Decl.") ¶ 6. The Yari Declaration states that neither BYP nor Stratus played a role in the writing, filming, promoting or distributing of FIND ME GUILTY, including any activities that took place in New Jersey. Id. Similar to MHF Zweite's contention, BYP and Stratus claim that they were credited as producers because they "acquired rights in the project." Defs. Br. at 4.

Neither BYP nor Stratus own real estate, have mailing addresses, phone listings, hold bank accounts, own personal property or rent property in New Jersey. Yari Decl. ¶ 7. Further, neither BYP nor Stratus are registered to do business in New Jersey or pay taxes to New Jersey. Finally, the Yari Declaration states that neither BYP nor Stratus have offices, employees or agents in New Jersey. Id.

### 3. Wolfgang Schamburg

Wolfgang Schamburg ("Schamburg"), an individual defendant, is employed by Academy Film GmbH as a managing director. Schamburg Decl. ¶ 2. Academy Film GmbH is the general (managing) partner of defendant MHF Zweite. Id. Schamburg was credited as a producer of FIND ME GUILTY. Id. ¶ 8.

Schamburg, a German citizen and resident, has never visited New Jersey for any purpose and

does not have a mailing address, phone listing or property in New Jersey. Id. All of the actions Schamburg executed on behalf of MHF Zweite in regard to FIND ME GUILTY took place in Germany or California. Id. ¶ 6.

### 4.  Dr. Ernst-August Schnieder

Dr. Ernst-August Schnieder ("Schnieder"), an individual defendant, is employed by Academy Film GmbH as a consultant. Declaration of Dr. Ernst-August Schnieder ("Schnieder Decl.") ¶ 2. Schnieder, a German citizen, has never been to New Jersey (other than for transit through Newark International Airport) and has no mailing address, phone listing or property in New Jersey. Id. ¶¶ 2-4. All of the actions Schnieder executed on behalf of MHF Zweite in regard to FIND ME GUILTY took place in Germany or California. Id. ¶7. Further, the Schnieder Declaration states that Schnieder played no role in the creation, promotion or distribution of FIND ME GUILTY that may have taken place in New Jersey.

### 5.  Oliver Hengst

Oliver Hengst ("Hengst"), an individual defendant, is employed by Academy Film GmbH as a consultant. Hengst Declaration ("Hengst Decl.") ¶ 2. Hengst claims that all his actions on behalf of MHF Zweite in relation to FIND ME GUILTY took place in either Germany or California. Id. ¶ 5. However, Hengst visited the FIND ME GUILTY set in New Jersey on two occasions during a visit to New York City on unrelated business travel in the Fall of 2004. The Hengst Declaration states that Hengst played no role in the film's creation, promotion or distribution while present on the film set or which otherwise may have taken place in New Jersey. Id. ¶¶ 2, 4. Hengst has not visited New Jersey for any purpose on any other occasion. Id. ¶ 5. Hengst does not own real estate,

hold a bank account, have a mailing address or phone listing in New Jersey.

      6.    <u>Robert Yari</u>

Robert Yari ("Yari"), an individual defendant, is an executive or principal in four separately incorporated companies named as defendants in this action: BYP, Stratus, Yari Film Group Releasing, LLC, and Yari Film Group, LLC. Yari Decl. ¶ 5. Yari Film Group Releasing, LLC and Yari Film Group, LLC are not contesting this Court's assertion of personal jurisdiction over them. <u>Id.</u> The Yari Declaration asserts that, although Yari was a producer of FIND ME GUILTY, he never visited the set in New Jersey or engaged in any production activities here. Further, Yari did not assist in writing the screenplay upon which the film is based. <u>Id.</u> Yari's production services were undertaken in California, where he resides and works. <u>Id.</u> Yari was not present in New Jersey during any research, writing, filming, producing, promoting or distributing activities related to the movie which may have taken place in New Jersey. <u>Id.</u> ¶ 3. Yari has not visited New Jersey during the past ten years other than arriving at or departing from Newark International Airport. <u>Id.</u> ¶ 4. Yari does not own real estate, hold bank accounts, own personal property, rent property, have a mailing address or phone listing in New Jersey. <u>Id.</u> ¶ 2. Additionally, Yari does not pay takes in New Jersey. <u>Id.</u>

**II.    DISCUSSION**

    **A.    Standard of Review**

"It is well-established that in deciding a motion to dismiss for lack of jurisdiction, a court is required to accept the plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff." <u>Toys "R" Us, Inc. v. Step Two, S.A.</u>, 318 F.3d 446, 457 (3d Cir. 2003) (citing <u>Pinker v.</u>

Roche Holdings, Ltd., 292 F.3d 361, 368 (3d Cir. 2002)).  However, when a defendant raises a jurisdictional defense, as the Foreign Defendants have in this case,

> the burden falls on the plaintiff to come forward with sufficient facts to establish that jurisdiction is proper.  Carteret Sav. Bank v. Shushan, 954 F.2d 141, 146 (3d Cir. 1992).  The plaintiff meets this burden and presents a prima facie case for the exercise of personal jurisdiction by "establishing with reasonable particularity sufficient contacts between the defendant and the forum state."

Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992) (quoting Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n, 819 F.2d 434 (3d Cir. 1987)).  In this case, Plaintiff must establish that sufficient contacts exist between the Foreign Defendants and New Jersey in order to defeat the Foreign Defendants' challenge to this Court's jurisdiction.

### B.      Personal Jurisdiction

New Jersey's long-arm statute is coextensive with the Due Process Clause of the Constitution.  N.J. Civ. Prac. R. 4:4-4.  Thus, federal courts applying New Jersey's long-arm statute may assert personal jurisdiction over non-resident defendants to the extent permitted by principles of due process.  See IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 258-59 (3d Cir. 1998).  The exercise of this Court's jurisdiction comports with constitutional due process if the Foreign Defendants have "purposefully directed [their] activities toward residents of the forum state, or otherwise 'purposefully availed [themselves] of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.' "  Id. at 259 (internal citations omitted).  See also Hanson v. Denckla, 357 U.S. 235, 253 (1958); World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

In evaluating whether personal jurisdiction exists, the Court may only consider the actions

taken by the defendant individually.  See Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 417 (1984).  Similarly, the Court may not impute the actions of a corporation to an employee nor may it impute the actions of a subsidiary corporation to a parent corporation.  See Calder v. Jones, 465 U.S. 783, 790 (1984); Seltzer v. I.C. Optics, Ltd., 339 F. Supp. 2d 601, 609 (D.N.J. 2004).

Personal jurisdiction may be exercised under either a general or specific jurisdiction theory. Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001).  In this case, Plaintiff asserts that jurisdiction is proper under both theories.

### C. General Jurisdiction

General jurisdiction over the Foreign Defendant exists if the this Court finds that their contacts with the forum are "continuous and systematic." Helicopteros Nacionales de Columbia, 466 U.S. at 416.  At oral argument, Plaintiff conceded, and this Court agrees that this Court's general jurisdiction over the Foreign Defendants is a more difficult issue than the issue of specific jurisdiction.  Because it is this Court's conclusion that specific jurisdiction exists over the Foreign Defendants, this opinion will not address the issue of general jurisdiction.

### D. Specific Jurisdiction

To meet the burden of showing that specific jurisdiction exists over the Foreign Defendants, Plaintiff must satisfy two requirements.  See IMO Indus., Inc., 155 F.3d at 259.  First, Plaintiff must establish that the Foreign Defendants have "constitutionally sufficient minimum contacts with [New Jersey]." Toys "R" Us, 318 F.3d at 451 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462 , 474 (1985)).  Alternatively, the first requirement may be satisfied if the Foreign Defendants'

"tortious conduct" has "effects in the forum state." Id. at 455 n.6 (citing Remick, 238 F.3d at 258). Second, to satisfy due process requirements, personal jurisdiction over the Foreign Defendants must comport "with traditional notions of fair play and substantial justice," for example, the Foreign Defendants "should reasonably anticipate being haled into court in the forum." Id. (internal quotation marks and citations omitted).

The Foreign Defendants strenuously emphasize the lack of their physical presence in New Jersey. Specifically, the Foreign Defendants emphasize that they do not have offices in New Jersey and most of them have never visited New Jersey other than to pass through Newark International Airport. Defs. Br. 9-12; see also Schamburg Decl. ¶¶ 4-12; Yari Decl. ¶¶ 5-7; Schneider Decl. ¶ 6; Hengst Decl. ¶¶ 4-5. However, while physical presence may be indicative of the extent of a defendant's contacts with a forum, physical presence is in no way a requirement for the exercise of personal jurisdiction. See IMO Indus., 155 F.3d at 259 (holding that "[p]hysical presence within the forum is not required to establish personal jurisdiction over a nonresident defendant"); Grand Enter. Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 482 (3d Cir. 1993) (due process is not violated and personal jurisdiction can be established without a defendant's physical presence in the forum). While the Foreign Defendants ask this Court to merely count the number of contacts each Foreign Defendant has (or lacks) with New Jersey; this Court is more persuaded by the fact that these defendants knowingly and purposefully invested their funds in a movie that was to be largely filmed in New Jersey based on events that took place in New Jersey involving New Jersey citizens .

    1.    <u>Minimum Contacts Analysis</u>

To establish requisite minimum contacts for the exercise of specific jurisdiction, a plaintiff

must satisfy a two-part test. First, the forum state "must have some palpable interest . . . in adjudicating a dispute within its borders for jurisdiction to be lawfully acquired." Empire Abrasive Equip. Corp. v. H.H. Watson, Inc., 567 F.2d 554, 557 (3d Cir. 1977). Second, the exercise of jurisdiction cannot "be fundamentally unfair to the defendant." Id. (citing Jonnet v. Dollar Sav. Bank of New York, 530 F.2d 1123, 1140 (3d Cir. 1976) (Gibbons, J., concurring)).

In finding that specific jurisdiction exists, this Court looks to the Third Circuit's decision in Edy Clover Products., Inc. v. National Broadcasting Co., Inc. 572 F.2d 119 (3d Cir. 1978). The Third Circuit found that the Empire Abrasive requirements were satisfied because (1) "a state has an interest in protecting its residents from interstate transmissions that infringe their copyrights . . . therefore, [the state has] an interest in providing a forum;" and (2) the defendant knew that the television production at issue would be transmitted interstate and thus could "anticipate that infringement may result at places remote from the place of production." Id. at 120-21. The Court concluded that there was "no unfairness in requiring the producer to answer such a charge in the state in which it arises." Id. at 121. Specific jurisdiction over the Foreign Defendants exists in this case for the same reasons articulated by the Edy Clover court; namely, that (1) the State of New Jersey has a strong interest in protecting Rudolph's (a New Jersey citizen) copyright from infringement; and (2) the Foreign Defendants admit they are producers of FIND ME GUILTY, a film widely distributed in the State of New Jersey. This Court agrees with Plaintiff's argument that the Foreign Defendants "undoubtedly knew that the Film they had produced would be transmitted to and sold in New Jersey and thus should have anticipated that infringement might have resulted there." Id.

The Foreign Defendants respond to Plaintiff's argument by contending that Edy Clover has

-9-

no application to the individual foreign defendants in this case - Schamburg, Schneider, Hengst and Yari. The Foreign Defendants argue that Edy Clover's holding is limited to exercising specific jurisdiction over a corporation and not employees of the corporation. See Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781 n. 13 (1984) (holding that "jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him"); Helicopteros Nacionales de Columbia, 466 U.S. at 417 (holding that "unilateral activity of another party or a third person is not an appropriate consideration"). In reviewing Edy Clover, this Court sees no basis for drawing such a distinction.

### III. CONCLUSION

For the reasons stated, it is the finding of this Court that the Foreign Defendants' motion to dismiss is **denied**. An appropriate Order accompanies this Opinion.

 S/ Dennis M. Cavanaugh<br>
Dennis M. Cavanaugh, U.S.D.J.

Date:     March  27 , 2007
Orig.:    Clerk
cc:       Counsel of Record
          The Honorable Mark Falk, U.S.M.J.
          File